## DOUCHAN v. UNITED STATES.
### No. 9145.

Circuit Court of Appeals, Sixth Circuit.

April 15, 1943.

Writ of Certiorari Denied June 14, 1943.
See 63 S.Ct. 1439, 87 L.Ed. ——.

Walter M. Nelson and Isaac M. Smullin, both of Detroit, Mich., for appellant.

Vincent Fordell, of Detroit, Mich. (John C. Lehr, Thomas P. Thornton, and Joseph C. Murphy, all of Detroit, Mich., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

Appellant was indicted for violation of § 52, sub. b, Title 11 U.S.C., 11 U.S.C.A. § 52(b), the indictment charging him in two counts with wilfully, maliciously, knowingly and fraudulently concealing from Theodore Hughes, trustee of appellant's estate in bankruptcy, upon August 15, 1936, real estate bonds of the Bankers Trust Company of Detroit, Michigan, of the par value of $6,200, and similar real estate bonds of a par value of $20,000. After a jury trial appellant was convicted and sentenced in accordance with the indictment.

Appellant contends that the judgment must be reversed (1) because there is no evidence of wilful and fraudulent concealment; (2) because prejudicial error existed in the admission of evidence and in the charge of the court; (3) because he was indicted and tried and convicted under an ex post facto law.

Appellant's voluntary petition in bankruptcy, filed February 19, 1936, disclosed debts in the amount of $54,000, and no assets. For some fifteen months before that time and for seven weeks thereafter appellant held registered in his own name with his broker real estate bonds of the par value of $20,000, which are in the main the subject of this controversy.

One of appellant's creditors objected to his discharge, upon the ground, among others, that the bonds in question represented an equity and interest of the bankrupt in an apartment house known as Vancouver Hall, located at 8200 Epworth Boulevard, Detroit, Michigan, and that the bankrupt, with intent to defraud his creditors, transferred his equity in the bonds to his brother, Mike Prodanov, and concealed them from the trustee. The creditor's objections were overruled by the referee, who recommended the discharge, which was granted by the District Court upon March 15, 1937. Subsequently, on August 18, 1937, the bankrupt's estate was reopened, and the discharge was vacated, but on October 19, 1937, this order in turn was vacated and the discharge was reinstated. At the June term of 1938 the indictment was returned, charging fraudulent concealment of assets, as above set forth.

The proceedings in the bankruptcy court are not res adjudicata in the criminal court, for the parties are not identical. The discharge operates against appellant's creditors as to appellant's dischargeable debts, Title 11, U.S.C. § 35, 11 U.S.C.A. § 35, but is not binding upon the United States.

Appellant began to buy the bonds in question February 1, 1933, and they were registered in his name upon the broker's ledger at all times up to September 21, 1934. Appellant contends that the bonds in reality belonged to Prodanov who, he says, bought them with the proceeds of the rents of the Vancouver Hall apartments,

which belonged to Prodanov. On September 21, 1934, appellant transferred $23,200 worth of these bonds into the account of Earl W. Evans, his broker, who handled his account, and on November 27, 1934, he had other similar bonds in his name, with a par value of $4,700, transferred into Evans' account. At the time of the transfer appellant stated to Evans that he wanted the bonds in the broker's name "for fear that one of his creditors would seize them."[1] On November 27, 1934, $6,200 of these bonds were transferred to Prodanov, and $20,000 were transferred back to appellant. No evidence of consideration for any of these transfers was presented.

Appellant told the broker that he bought the Vancouver Hall apartments, the profits of which were alleged to have paid for the real estate bonds, in his brother's name to "prevent it being grabbed on a deficiency judgment." While appellant claimed to be merely the manager for his brother, the sale of this apartment was authorized in a receivership proceeding in which the petition prayed for authority to sell the apartments to "Paul Douchan, of Detroit, Michigan." The petition for sale acknowledges down payment of $10,000 by appellant, also acknowledges the supplying by appellant of labor and repairs to the amount of $3,000, and states that appellant "is able to secure financial assistance to the extent of $2,000.00 in cash, provided he can secure the deed to the property." The order of the court authorized execution of the deed to appellant. The deed was executed November 13, 1931, but by direction of appellant was issued in the name of Prodanov, who signed the check for $2,000 which constituted the cash payment. Prodanov was not in Detroit at the time the deed was issued, and while he went there in 1931 and stayed for a year, for the greater part of the period in question here he resided in New York, where he worked as a blacksmith. He came to Detroit permanently in 1938.

The tax records show that the Vancouver Hall apartments, listed in appellant's name for the years from 1930 to 1937, was valued at $41,000. In 1935 appellant made an affidavit to the tax authorities that he was the owner of the personal property in the Vancouver Hall apartments, but in 1936 he signed a similar affidavit as "attorney in fact" of Prodanov. While appellant claimed to have been acting for Prodanov from 1931 under power of attorney in all these transactions, the document was not recorded until 1935, although it bears the date of May 18, 1931. Prodanov testified that the bonds had been paid for with his money and that the Vancouver Hall apartments belonged to him, but he stated that it was appellant's business "all the way through," and that he "did not get as much as $700 out of it." Appellant declared that he "just * * * threw away" the records of this transaction, and Prodanov destroyed his records of them in 1938. At the trial appellant admitted that none of these bonds was received by or turned over to Hughes, the original trustee.

We think there is no merit in the contention that the Government has failed to sustain the burden of proof as to guilty knowledge on the part of appellant in concealing the bonds from the trustee as charged in the indictment. The evidence as to the circumstances surrounding the purchase of the Vancouver Hall apartments and of the bonds tends to prove that the appellant owned the bonds at the time of bankruptcy and is strongly corroborated by the appellant's admissions made to the disinterested witness, Evans, his broker, as to why he put the title to the apartments in Prodanov's name and shifted the title to the bonds. Demand on the part of the trustee was not necessary, as urged, in order to establish concealment. Kalin v. United States, 5 Cir., 2 F.2d 58; Goetz v. United States, 7 Cir., 59 F.2d 511; United States v. Shapiro, 7 Cir., 101 F.2d 375. It is contended that the record does not show that appellant had actual knowledge of the appointment of the trustee [Cf. United States v. Yasser, 3 Cir., 114 F.2d 558], and that guilty knowledge is therefore not established. In the Yasser case the accused was charged with concealing property belonging to the estate of another. In Rachmil v. United States, 9 Cir., 43 F.2d 878, also relied on, the accused had been in Canada during the entire time from seventeen days before the institution of involuntary bankruptcy proceedings up to the time of his return upon extradition proceedings. It was not shown that he had any knowledge of the existence of the proceedings. The decisions in these cases are not pertinent here, where the petition in bankruptcy was voluntary and the bank-

---

[1] This testimony of the broker, we are informed, was not presented before the referee in bankruptcy.

rupt participated in the various proceedings leading up to his securing the discharge. He is charged with concealing property belonging to his own estate from a court officer appointed under the statute in a proceeding which he instituted. When confronted with the question, "You told the bankruptcy court and trustee in bankruptcy that you had no books or records," he did not deny this, but answered, "I guess I didn't have my own."

■ The certified copy of the docket entries and the referee's calendar entries in the bankruptcy proceedings show that the bankrupt was sworn and examined at the meeting of August 4, 1936, at which Hughes was appointed trustee. These entries are evidence as to matters relevant to the charges. Philadelphia, Wilmington & Baltimore R. Co. v. Howard, 13 How. 307, 330, 14 L.Ed. 157; Title 11 U.S. C. § 67 sub. a, 11 U.S.C.A. § 67, sub. a. They show the entry of the order of Hughes' appointment on August 4, 1936, of the trustee's acceptance, the approval of his bond, and the filing on August 13, 1936, of the trustee's report of exempt property. In the trustee's first report he stated that the case had had several adjourned meetings for questioning the bankrupt, "which is still continuing." Hughes filed trustee's reports on September 28, 1936, and on December 17, 1936, and filed a final report on September 30, 1937, in which he stated that he had neither received nor paid over any money on account of the estate and that there were no assets over and above the exemptions.

■ Fraudulent concealment of assets from a trustee in bankruptcy may be proved by circumstantial evidence. Stern v. United States, 3 Cir., 193 F. 888. The overt offense described under this statute, as pointed out in the Stern case, cannot readily be proved by direct testimony. The evidence must be such as in the practical affairs of life tends to produce belief and conviction in the minds of those to whom the evidence is addressed. We think that such evidence was presented here as to justify the jury in its finding that the appellant was aware of the identity and existence of the trustee, and concealed the assets from him.

■ We find no reversible error in the admission of the testimony of Donald Kipp, successor trustee, appointed September 30, 1937, who testified that the bonds in question had not been tendered to him as trustee. Appellant contends that this testimony was inadmissible because the charge was not concealment of the bonds from Kipp. But the evidence was in no case prejudicial. The court stated in the presence of the jury that the appellant was not charged with concealment from Kipp, and that it would "not pay any attention to it." No charge upon the point was requested by appellant's counsel.

■ Nor does reversible error exist in the charge of the court to which no exception was taken or objection made. The court will notice plain error even though objection and exception were not made, but an examination of the charge with this rule in mind compels the conclusion that fairly read, in its full context it is not misleading.

■ The most important question in the case is presented by the fact that the court, in charging the jury, read from an amendment to the Bankruptcy Act which became effective September 22, 1938, while the acts charged were performed in 1936 and were covered by the amendment to the Bankruptcy Act which became effective in 1926. The pertinent portions of the two sections are printed in the margin.[2] Ap-

---

[2] Amendment of May 27, 1926, 44 Stat. 665.

§ 52 sub. b. "A person shall be punished, by imprisonment for a period of not to exceed five years upon conviction of the offense of having knowingly and fraudulently (1) concealed from the receiver, trustee, United States marshal, or other officer of the court charged with the control or custody of property, or from creditors in composition cases, any property belonging to the estate of a bankrupt; or (2) made a false oath or account in, or in relation to any proceeding in bankruptcy; or (3) presented under oath any false claim for proof against the estate of a bankrupt, or used any such claim in composition, personally, or by agent, proxy, or attorney, or as agent, proxy, or attorney * * *."

Amendment of June 22, 1938, 11 U.S.C. A. § 52, sub. b.

§ 52, sub. b. "A person shall be punished by imprisonment for a period of not to exceed five years or by a fine of not more than $5,000, or both, upon conviction of the offense of having knowingly and fraudulently (1) concealed from the receiver, custodian, trustee, marshal, or other officer of the court charged with

148

pellant urges here that he was indicted, tried and sentenced under a statute which was not in effect at the time that the act was committed, which applied new punitive measures to an alleged crime already committed, and altered the situation of the appellant to his disadvantage. If the record showed this to be the case the judgment necessarily would be reversed. Lindsey v. Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182. Cf. Viereck v. United States, 63 S.Ct. 561, 87 L.Ed. ——. However, the record does not support the appellant's statement of the facts. So far as this record shows appellant at no point challenged the indictment by demurrer or motion nor in any way questioned that it was drawn under the appropriate statute. Both counts of the indictment are correctly framed to conform to the earlier enactment. Appellant does not question that the acts charged were indictable under the earlier and correct statute. The trial took place under this indictment and the material evidence received bore upon the allegations of the indictment conforming to the correct statute. Counsel for appellant did not call attention to the fact that the court was reading from the statute which became effective in 1938. The court did not read to the jury any part of the statute of 1938 with reference to imprisonment nor other portions which differ substantially from the provisions of the earlier statute, such as the period of limitations. The only material difference between what the court read and the correct statute is that the amended statute contains the phrase "in any proceeding under this title" instead of the phrase "in composition". The trial court, at the close of the charge, asked "Have I covered it all as you believe it to be?" and received neither correction nor suggestion.

 Nor does it appear that the appellant was sentenced under the wrong statute. The sentence conforms precisely to the amendment of 1926 and in view of the presumption of validity attaching to judicial proceedings, we conclude that it was pronounced under the earlier statute.

Appellant was in no way prejudiced by the reading in the presence of the jury of

so small a portion of the later statute. No emphasis was given to the phrase "in any proceeding under this title," which was the only part read that materially differs from the earlier provisions. The verdict found the appellant guilty "as charged." This means guilty as charged in the indictment, and not as inadvertently read by the court. We conclude that the elaborate argument of appellant with reference to the unconstitutionality of ex post facto laws has no application.

The judgment is affirmed.

the control or custody of property, or from creditors in any proceeding under this title, any property belonging to the estate of a bankrupt; or (2) made a false oath or account in or in relation to any proceeding under this title; or (3) presented under oath any false claim for proof against the estate of a bankrupt, or used any such claim in any proceeding under this title, personally, or by agent, proxy, or attorney, or as agent, proxy, or attorney * * *."