**UNITED STATES v. FRAIDIN et al.**

No. 20562.

District Court, D. Maryland.

Oct. 27, 1945.

See, also, 55 F.Supp. 129.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for plaintiff.

Wilfred T. McQuaid, of Baltimore, Md., for defendants.

COLEMAN, District Judge.

The question here presented is whether a certain prosecution for an offense under the Bankruptcy Act is barred by limitations.

The defendants, six in number, one of whom, David Fisher, was adjudicated a bankrupt by this Court on June 28, 1938, were indicted on February 27, 1945, under the provisions of Section 29, sub. b, of the Bankruptcy Act as amended, 11 U.S.C.A. § 52, sub. b, for unlawfully concealing assets from the receivers, and subsequently from the trustee of Fisher's estate in bankruptcy. The bankrupt has never been granted a discharge, nor did he ever apply for one.

Specifically, the indictment alleges that the defendants "beginning on or about the 28th day of June, 1938, and continuously thereafter, up to and including the date of the filing of this indictment, at Baltimore, * * *, did unlawfully, knowingly, wilfully, feloniously and fraudulently conceal from Louis J. Sagner and Jack L. Medwedeff, the Receivers, and from Jack L. Medwedeff, the Trustee, of the estate in bankruptcy of the said David Fisher, individually and trading as Federal Sales Company as aforesaid, a large amount of personal property belonging to the said estate of the said David Fisher, individually and trading as Federal Sales Company as aforesaid, then in bankruptcy, to wit: certain goods, wares, merchandise and moneys, the same being a part of the stock of goods and proceeds thereof held by the said David Fisher, individually and trading as Federal Sales Company as aforesaid, a more particular description of which is to the Grand Inquest aforesaid unknown, and hence cannot be given, by reason of the fact that the same were concealed as aforesaid and are still concealed; * * *."

Two of the defendants filed petitions for a bill of particulars, alleging that they intended to plead limitations in bar of the prosecution under the indictment, but that in order to do so, they must be advised more particularly of the acts, dates and nature of the concealment alleged in the indictment. The Government answered these petitions asserting, among other things, that the concealment of assets as set forth in the indictment occurred at the time the involuntary petition in bankruptcy against Fisher was filed, namely, June 28, 1938. Thereupon, these two defendants filed pleas of limitations to the indictment on the ground that it had been found by the Grand Jury more than three years after the commission of the alleged offense. Full argument of counsel has been heard on these pleas, and the sole question now before the Court is whether prosecution under the indictment is barred by limitations.

The provisions of the Bankruptcy Act which are in issue are contained in Section 29, sub. d, of that Act as amended by the Act of June 22, 1938, commonly known as the Chandler Act, 11 U.S.C.A. § 52, sub. d, which is as follows: "A person shall not be prosecuted for any offense arising under this title unless the indictment is found or the information is filed in court within three years after the commission of the offense: Provided, That the offense of concealment of assets of a bankrupt shall be deemed to be a continuing offense until the bankrupt shall have been finally discharged, and the period of limitations herein provided shall not begin to run until such final discharge."

Summarized, the Government contends that prosecution is not barred under the provisions of the Bankruptcy Act just quoted because (1) a statute of limitations is purely an act of grace on the part of Congress and, therefore, if Congress sees fit to increase the time limit within which prosecutions may be had, or even to remove completely all limitation, Congress does not thereby take away from the one sought to be prosecuted a right of which he may not constitutionally be deprived, even though—as is true in the present case because the Chandler amendments did not become effective until September 22, 1938, —the change made in the statutory time limit became effective after the date of the alleged offense, since it is not an ex post facto law within the constitutional meaning and use of that phrase because the three year bar of the statute as it stood before amendment had not run in favor of the defendant at the time of the amendment; and (2) the proviso in question does not constitute ex post facto legislation with respect to the instant case, by defining the offense of concealment of assets as a continuing one, because it has not changed the ingredients of the offense, or altered the situation of the accused to their disadvantage.

As opposed to the Government's position, counsel for the defendants assert: (1) that the provisions of the Bankruptcy Act just quoted, making the offense of concealment of the assets of a bankrupt a continuing offense until the bankrupt shall have been finally discharged, is ex post facto legislation when applied to a charge of concealment in a bankruptcy proceeding which has occurred prior to the effective date of the Chandler Act amendment; (2) that the offense of concealment charged in the present indictment occurred, if at all, more than three years before the filing of the indictment on February 27, 1945, and, therefore, the prosecution is barred by the very terms of the statute as it stood before amendment, that is, without the proviso, because the amendment is not applicable to the present case, the bankrupt's adjudication having occurred, and the first meeting of his

creditors having been held, prior to the effective date of the amendment, namely, September 22, 1938; and (3) that since, by the proviso in the Chandler Act amendment, the period in which an indictment could be brought for concealment of assets against this defendant might run indefinitely because this bankrupt can never obtain a discharge, the statute is, for this reason, invalid.

■ The facts with respect to the failure of the bankrupt, one of the defendants, David Fisher, to obtain a discharge are as follows: He never applied for a discharge, although having been adjudicated a bankrupt on June 28, 1938, he was obligated, under the law as it then stood, to file an application, if he desired a discharge, within twelve months thereafter, the only extension of this time limit being covered by the further provision that "if it shall be made to appear to the judge that the bankrupt was unavoidably prevented from filing it [his application for a discharge] within such time, it may be filed within but not after the expiration of the next six months." Bankruptcy Act, Sec. 14, sub. a, 11 U.S.C.A. § 32, sub. a. Since the bankrupt, as just stated, never made *any* application, any right to a discharge which he might have had under the law before the Chandler amendment, became forever foreclosed by operation of law on December 28, 1939. Armstrong v. Norris, 8 Cir., 247 F. 253; In Re Moore, 2 Cir., 36 F.2d 429.

■ The first question, therefore, to be determined is whether the discharge provisions of the old law, or those of the amendatory Act, apply.

The Chandler amendment, Section 6 (b), 11 U.S.C.A. § 1 note, provides that "Except as otherwise provided in this amendatory Act, the provisions of this amendatory Act shall govern proceedings so far as practicable in cases pending when it takes effect; but proceedings in cases then pending to which the provisions of this amendatory Act are not applicable shall be disposed of conformably to the provisions of said Act approved July 1, 1898, and the Acts amendatory thereto and supplementary thereto." Applying this provision to the facts in the present case, it is true that the bankrupt estate of David Fisher was still being administered on September 22, 1938, the effective date of the amendatory Act, and in fact the proceeding was not finally closed until July 7, 1941. However, the first and only meeting of the bankrupt's creditors was held on July 28, 1938, that is, prior to the effective date of the amendment. Under these circumstances can it be said that it is "practicable" to have the amendatory Act govern the matter of discharge?

It has been held that where the maximum time allowed for filing an application for discharge, under the law prior to the amendatory Act, has expired before the effective date of that Act, the bankrupt is precluded from a discharge thereafter. In re Cederbaum, D.C., 27 F.Supp. 1014. In the present case, such maximum time had not expired. However, we are of the opinion that this fact is not controlling, and that since not only had both the adjudication and the first meeting of creditors antedated the effective date of the amendatory Act, but the bankrupt has made no attempt whatsoever to obtain a discharge under either the law as it stood at the time he was adjudicated a bankrupt (June 28, 1938), and when the first meeting of his creditors was held (July 28, 1938), or after the amendment, it would not be "practicable" but on the contrary, highly impractical to say in a distinct proceeding such as the present one,—not in the bankruptcy court at all,—that the amendatory Act should be treated as nevertheless applicable in determining the rights of third parties. This conclusion finds support in the adoption by the District Court for the Southern District of New York of a local Bankruptcy Rule (No. 19) pursuant to which the amendatory Act does not apply in cases where adjudication, without more, has occurred before the effective date of the amendatory Act. See In re Cederbaum, supra.

There are a number of cases holding that where the bankrupt's right to apply for discharge has not been barred by the provisions of the old Act at the time when the amendatory Act became effective, as was true in the present case, it was "practicable" and therefore obligatory to apply the discharge provisions of the amendatory Act. In a decision of the Circuit Court of Appeals for the Ninth Circuit, In re Wara, 116 F.2d 447, at page 448 upon facts quite similar to those before us, the Court said:

"In this case, no application for a discharge was ever filed. A meeting of appellant's creditors—of whom, it appears, there were only three—was held on March 16, 1938. Whether appellant was examined or not the record does not show. The ref-

eree's certificate states that the case was closed on June 30, 1938, but that cannot be so. For, under § 14 of the Bankruptcy Act, as it then existed, appellant had until February 16, 1939, within which to file an application for a discharge. Meanwhile, on September 22, 1938, while this case was pending, the Chandler Act took effect.

"Relying on § 14 of the Bankruptcy Act, as amended by § 1 of the Chandler Act, and assuming, therefore, that his adjudication operated as an application for a discharge, appellant, on September 19, 1939, filed his petition praying that his application be set for hearing, that notice thereof be given, and that, upon such hearing, his application be granted. The petition was referred to a referee in bankruptcy. The referee reported that no application for a discharge had been filed; that the time within which an application might have been filed under § 14 of the Bankruptcy Act, as it existed prior to the Chandler Act, had expired; that § 14 of the Bankruptcy Act, as amended by § 1 of the Chandler Act, was not applicable to this case; and that, therefore, appellant's adjudication did not operate as an application for a discharge. As there was no other application, the referee recommended that appellant's petition be denied. The court approved the report, adopted the recommendations and denied the petition. This appeal followed.

"As previously stated, this case was pending on September 22, 1938, when the Chandler Act took effect. The proceedings here involved were subsequent to that date and hence were governed, 'so far as practicable,' by the provisions of the Chandler Act, including, of course, § 14 of the Bankruptcy Act, as amended by § 1 of the Chandler Act, which provides that 'The adjudication of any person, except a corporation, shall operate as an application for a discharge.'

"We think it was 'practicable' for § 14 of the Bankruptcy Act, as amended by § 1 of the Chandler Act, to govern these proceedings as fully and completely as if appellant's adjudication had occurred after the Chandler Act took effect. We accordingly hold that appellant's adjudication operated as an application for a discharge and should have been so treated by the court. In re Smith, 2 Cir., 112 F.2d 711, 712; In re Farrow, D.C.S.D.Cal., 28 F. Supp. 9, 10; In re Holder, D.C.N.D.Ga., 29 F.Supp. 331, 332; In re Pontello, D.C. W.D.Mich., 29 F.Supp. 332. See, also, concurring opinion of Judge Clark in Cohen v. Keller, 2 Cir., 108 F.2d 495, 496."

To the same effect, in addition to cases cited in the Wara case, are In re Jacobs, D.C., 31 F.Supp. 620; In re Pettis, D.C., 39 F.Supp. 931; In re Powers, D.C., 42 F. Supp. 356; In re Victor's Ladies' Shop, D.C., 45 F.Supp. 417.

It is to be noted that the theory underlying the aforegoing decisions is that since, on the effective date of the amendatory Act, the bankrupt might still have obtained leave to file a petition for a discharge which is true in the present case, he should not be denied any benefit that might flow from the application of the new law. The test of whether it is "practicable" to apply the provisions of the amendatory Act is whether they can be applied fairly, conveniently and certainly, In re Old Algiers, 2 Cir., 100 F.2d 374, In re Carter, 2 Cir., 32 F.2d 186, because there is no vested right in the bankrupt to have the law stand as it was, provided the change can be so applied. In re Seaholm, 1 Cir., 136 F. 144.

It is true that in the present case, just as in the case of In re Wara, supra, and like cases, the time permitted to the bankrupt under the provisions of the old law for applying for a discharge had not expired at the time when the amendatory Act took effect. However, in the case of In re Wara it is significant that the bankrupt petitioned within a year of the effective date of the amendatory Act that its provisions governing discharge be made applicable to this case, while the administration of his estate was still pending in the bankruptcy court, or at least very shortly after its termination; whereas in the present case, the bankrupt has never taken any steps whatsoever to obtain a discharge and his case was closed nearly four years before the present indictment was brought, namely, July 7, 1941. The other decisions just referred to are distinguishable also because of some action taken by the bankrupt himself. We, therefore, do not believe it is reasonable to say that the discharge provisions of the Chandler Act can be said to apply "fairly, conveniently and certainly" for the purposes of the present case.

The next question to be determined is whether, even though, as we have just ruled, the discharge provisions of the old, and not the new law control and for this reason the bankrupt has by operation of

law become forever barred from obtaining a discharge, in view of the fact that three years had not expired between the time when the bankrupt was forever precluded from obtaining a discharge, and the date when the new law became effective, do the provisions of the old or the new law relating to the entirely different question of limitations upon prosecutions for concealment of a bankrupt's assets, apply?

We know of no reason for applying to the solution of this question a different test for determining the applicability of the sections of the old or of the new law relating to limitations from that which, as we have shown, must necessarily be applied in determining a similar question as between the discharge provisions in the old and in the new law. That is to say, is it "practicable" to apply the limitations provisions of the amendatory Act in the sense that they can be applied fairly? We feel that they can be so applied even though the opposite, as we have found, is true with respect to the discharge provisions of the amendatory Act, because enactments limiting the time for the prosecution of offenses may be changed or repealed altogether in any case where the original period of limitations has not yet completely run, that is to say, in any case where a right to acquittal has not yet been acquired when the amendatory Act goes into effect. In other words, where a statute extends a period of limitations or provides for the tolling thereof, it applies to offenses not barred at the time of the statute's passage; but such a statute cannot operate to revive offenses which were barred at the time of its enactment since it would in such case be ex post facto. Falter v. United States, 2 Cir., 23 F.2d 420; certiorari denied, 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003. However, although we, therefore, conclude that the provisions of Section 29, sub. d, of the Bankruptcy Act as amended by the Chandler Act are applicable to the present case, we believe that a correct interpretation of this section as amended will result in the present prosecution being barred by limitations, just as we would be required to rule that it were barred were the straight three year limitations of the old Act to govern.

We now proceed to give our reasons for this conclusion.

Prior to the amendments of 1926 to the Bankruptcy Act when the period of limitation for the prosecution of offenses was made three years, it had been one year as provided in Section 29, sub. d. The Chandler Act amendment made no changes in the meaning of the word "conceal" as now contained in clause (7) of Section 1, 11 U.S.C.A. § 1(7), which was clause (22) of former Section 1, namely, "'Conceal' * * * shall include secrete, falsify and mutilate; * * *." However, the proviso as now embodied in the Chandler amendments "that the offense of concealment of assets of a bankrupt shall be deemed to be a continuing offense until the bankrupt shall have been finally discharged, and the period of limitations herein provided shall not begin to run until such final discharge," is entirely new. This proviso is the result of conflicts in the decisions interpreting the meaning of "concealment" under the Act as it stood before the amendment. Some cases spoke of "concealment" only in terms of the duty to turn assets over to the trustee in bankruptcy. Others dealt with the problem on the theory of "continuous concealment". The theory underlying the proviso was employed, apparently, in an attempted solution of two problems under the Bankruptcy Act as it originally stood. One problem was what to do about property physically concealed before bankruptcy, and the other, how to apply the statute of limitations. Prior to the amendments of 1926, the only concealment contemplated was that by the bankrupt, and then only from his trustee, during bankruptcy or after his discharge. Thus, in a situation in which a bankrupt has secreted or fraudulently transferred property prior to the filing of a petition the theory of a continuing offense seemed an appropriate method of bringing concealment into the period of bankruptcy. Under the present wording of the statute, the obvious meaning of the clause indicates simply that the offense is committed by withholding, with criminal intent, information about the assets from an appropriate officer of the bankruptcy court. Previously, as has just been said, there had been some confusion as to just when the statute began to run. For example, in United States v. Phillips, 2 Cir., 196 F. 574, it was held that the statute began to run from the demand of the trustee; in Warren v. United States, 5 Cir., 199 F. 753, 43 L.R.A.,N.S., 278, where the physical act of concealing took place before filing of petition, it was held that the statute began to run upon the appointment of the trustee; and again, in

Johnson v. United States, 1 Cir., 163 F. .30, a different construction is indicated.

To summarize, in an effort to avoid further differences of interpretation, those who drafted the amendment apparently felt that their purpose would be accomplished by having the period of limitations governed completely by an event entirely distinct from the acts of the defendant in concealing his property, namely, by the event of discharge. However, there is no reported Congressional consideration of the proviso added to Section 29, sub. d. The Chandler Bill (H. R. 8046) passed the House August 10, 1937 (81 Cong.Rec. 8049). In his report, Representative Chandler, speaking for the Committee on the Judiciary of the House, set forth the objects of the Bill (House Report 1409 to accompany H.R. 8046). One of these objects (the fifth) is stated as being "To tighten up the provisions for the enforcement of the criminal provisions of the law." But the proviso with which we are here concerned was not in the Bill as it passed the House, it being added by the Senate Committee (83 Cong.Rec. 8681, 8684). However, just as was the case in the House, there is no reported Senate discussion of this proviso which appears to have been accepted by the House without comment, along with numerous other amendments to the Bill (83 Cong.Rec. 9102).

Collier on Bankruptcy states with respect to the amendment: "In view of the fact that a discharge might be refused because there was concealment or for numerous other reasons, it is quite possible that the period within which an indictment could be brought for concealment of assets might run interminably. It would seem that the general objective sought by the proviso could be attained by making the concealment of assets a continuing offense until discharge or *denial thereof.*" Collier on Bankruptcy, 14th Ed., Vol. 2, Sec. 29.14, page 1206. Collier, however, does not further discuss the amendment from the point of view of its validity.

■ Prior to the amendment, it was held that the statute of limitations in cases of concealment of assets did not begin to run until the last overt act had been committed. Thus, it had been held that so far as the offense of concealment from the trustee in bankruptcy is concerned, the period did not begin to run until the trustee qualifies by giving bond; see Block v. United States, 2 Cir., 9 F.2d 618; or, until he had been elected by creditors or appointed by the court on their failure so to elect; see Marcus v. United States, 3 Cir., 20 F.2d 454. But the language of the amendment seems to presume that in every case of bankruptcy there would ultimately be a discharge of the bankrupt, which, of course, is entirely contrary to fact, and to the provisions of the Act relating to discharge. Sec. 14, 11 U.S.C.A. § 32. Discharge does not follow as a matter of right but is a privilege, to be accorded to the bankrupt provided he meets certain requirements. The Act expressly prohibits a discharge if the bankrupt has committed one or more of the offenses enumerated in Section 29 of the Act (with one of which the bankrupt in the present case is charged under the present indictment), or has done any one or more of the six things enumerated in Section 14 of the Act. Sec. 14, sub. c, 11 U.S.C.A. § 32, sub. c.

■ Here, it may be noted, parenthetically, that the meaning of the phrase "final discharge" in the amendment is somewhat obscure because all discharges are final unless and until revoked. Also, it is to be noted that the charge in the indictment here is not one of conspiracy to commit an offense against the Bankruptcy Act. Such an indictment is not to be brought under Section 29 of the Act, but under Revised Statutes Sec. 5440, 18 U.S.C.A. § 88. It is well settled that a conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. United States v. McElvain, 272 U.S. 633, 47 S.Ct. 219, 71 L.Ed. 451; United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211.

Prior to the amendment, the theory of continuing offense was repudiated where its adoption would have produced the same result as that produced by the amendment, namely, would have indefinitely extended the time within which prosecutions might be had. For example, in Warren v. United States, supra, where all of a bankrupt's acts in reference to property alleged to have been concealed from his trustee had occurred at a time more than twelve months prior to the bringing of the indictment, it was held that the offense of concealment could not be regarded as a continuing one and that since the bankrupt had done nothing during the twelve month

period except to remain passive and silent, a prosecution was barred under Section 29, sub. d, of the Bankruptcy Act as it then,—1912,—stood. There, the Circuit Court of Appeals for the Fifth Circuit said (199 F. at pages 755, 756):

"The acts proved, relied on as concealment, were all of date more than 12 months before the indictment. The government's contention, therefore, must fall, unless the mere silence and passivity of the defendant after the alleged concealment makes the crime a continuing one, so that, to quote the brief, 'there is no statute of limitations to prevent the prosecution.' We cannot concede that such is the case. The government, to avoid the statute, should have begun the prosecution within 12 months after the commission of the acts constituting the offense.

"If the contention of the government were correct, the statute of one year, while in terms it is made to apply to cases of concealing assets, would in practice seldom have any application. Twenty years after the appointment of the trustee the bankrupt could be prosecuted for concealing assets, and the government could prove that he had purchased certain goods shortly before bankruptcy, that such goods were not surrendered, and then, by proof of some circumstances from which the jury might determine that there had been concealment, have a case sufficient to go to the jury. Twenty years having elapsed, the defendant's witnesses might be gone or dead, and even his own memory might fail him in making a satisfactory explanation. When the trustee is appointed, he has title to the assets and should take possession. The creditors are interested that he should do so. The schedules show that property is surrendered by the bankrupt. If it is to be claimed that he has fraudulently and knowingly concealed a part of his estate, in fairness to the bankrupt the charge should be brought within 12 months after the unlawful act. The statute plainly so reads. Ordinarily, and in this case, there is no reason why the prosecution could not have been begun within the year.

"It is true that there may in some cases be difficulty in showing when the act or series of acts occurred, which made the crime complete; but when the property is knowingly and fraudulently concealed from the trustee—a fact that may be proved like any other fact—the bankrupt is liable to prosecution and the statute of limitations begins to run. In other words, it runs from the time of the commission of the offense.

\*     \*     \*     \*     \*

"If the indictment here were for a conspiracy to conceal property of the bankrupt from the trustee, and contemplated continuous acts in which the conspirators were to co-operate to carry out the criminal intention, the statute of limitations would not begin to run at the completion of the conspiracy; for the offense charged would be continuous, contemplating continuous future action to complete the crime. But here we have no such charge and no such proof. The defendant is charged with the act of fraudulently concealing certain property. The fact that concealed property remains concealed does not continue the offense of concealing it, for 'continuance of the result of a crime does not continue the crime.' The murdered man continues to be dead, but that does not make his murder a continuing offense."

Likewise, in United States v. Phillips, supra, it was held in the same year, by the District Court for the Southern District of New York, that a prosecution of a bankrupt for concealing property from his trustee was barred in one year after the property was actually concealed, and the trustee, knowing this fact, had made a demand for it. The Court said (196 F. at page 577): "If Phillips can be successfully prosecuted under this indictment, every living bankrupt who has been suspected of concealing property can at any time be indicted therefor. I do not so read the act. I am not able to assign the exact date when demand was made, but it was certainly before the 'turnover' order, and that was more than a year before indictment."

We accept as sound the Government's contention that Congress may change the offense of concealment of assets; that is, it may re-define it, just as it may change the "ingredients" of any crime, provided such alteration does not operate to deprive the accused of any constitutional right acquired before the law was changed, for such would be an ex post facto law.

We also accept as sound the contention of the Government that at common

law there was no limitation upon prosecutions in criminal cases and, therefore, prosecutions might be instituted at any time after the alleged commission of a criminal act, unless the time for so doing was limited by statute, the enactment of such a statute being looked upon as an act of grace on the part of the state or sovereign, in other words, subject to the will of the legislature. See United States v. Thompson, 98 U.S. 486, 25 L.Ed. 194; Moore v. State, 43 N.J.L. 203, 39 Am.Rep. 558; Commonwealth v. Duffy, 96 Pa. 506, 507, 42 Am.Rep. 554; People v. Ross, 325 Ill. 417, 156 N.E. 303; State v. Snyder, 182 Mo. 462, 82 S.W. 12. Therefore, as explained in an earlier part of this opinion, enactments limiting the time for the prosecution of offenses may be changed or repealed altogether in any case where a right to acquittal has not been acquired by the completion of the period of limitation. Thus, where a statute extends a period of limitation or provides for the tolling thereof, it applies to offenses not barred at the time of the statute's passage; but such a statute cannot operate to revive offenses which were barred at the time of its enactment, since it would, in such case, be ex post facto. See Falter v. United States, supra. So, it must be conceded that, subject to the aforegoing, Congress might have abolished all limitation upon prosecution for concealment of assets under the Bankruptcy Act. Congress has in fact expressly omitted offenses punishable by death from the operation of any statute of limitations. See 18 U.S.C.A. § 581a.

However, in spite of these well-established principles, we do not believe that a mere statement of them answers the precise question here in issue because, even if we assume that Congress might by express, clear language have completely abolished the three year limitation against prosecutions for concealment of assets by a bankrupt, it is obvious that by the language employed Congress did not intend so to do; and therefore, the question still remains to be answered: may Congress validly enact a statute of limitations whose language is so phrased as to result in affording no benefit of a time limit to some bankrupts and other persons and yet a definite time limit to others, although at the same time purporting to embrace them all as offenders of the same class, having committed the same type of offense?

Statutes which provide that the time during which an accused is absent from, or is not an inhabitant or usual resident of the jurisdiction, may be deducted from the limitation period, do not in fact afford any real analogy. Although it is true that under such statutes the tolling of the period of limitation may be indefinite, the distinction lies in the fact that in those cases it is within the control of the accused to extend the period, that is, to make the period definite or indefinite, and not, as in the present case, entirely beyond his control. Also, such statutes are to be construed in such a manner as to be of benefit to the accused, unless it clearly appears otherwise. See United States v. Mathis, 3 Cir., 28 F.Supp. 582; United States v. Eliopoulos, 3 Cir., 45 F.Supp. 777. The same rule requiring liberal construction in favor of the accused, as respects any statute increasing the period of limitation as to a particular crime, is well recognized. See United States v. McElvain, supra.

We concede that it was entirely permissible for Congress to legislate a formula for computing the period of limitations on a basis entirely different from that which had formerly obtained, namely, that the matter shall not be left to judicial determination, but shall depend upon the occurrence of a specified event. However, the question still remains: May such specified event be adopted as the criterion if, as a matter of practical application, such specified event will happen in some cases, and in others of the same type will never happen; that is to say, will afford to some offenders the benefit of a definite limitation within which they may be prosecuted, while at the same time affording no time limitation whatsoever to other offenders within which they may be prosecuted, because in their cases the specified event has not happened, and cannot happen? This precise question appears never to have been the subject of judicial interpretation in any Federal or State decision so far as we have ascertained. However, in a series of cases which we will now analyze, the Supreme Court has made certain pronouncements which we believe have very direct application to this question. Also, in United States v. Newman, D.C.N.Y. 63 F.Supp. 269 a decision by District Judge Caffey to which we will later more specifically refer, rendered on June 7, 1945, that is, since our original opinion in the present case, substan-

tially but not precisely the same question now before us was adjudicated.

As early as 1805, in an opinion by Chief Justice Marshall, the Supreme Court, in Adams v. Woods, 2 Cranch 336, 2 L.Ed. 297, decided that the Act of April 30, 1790, 1 U.S.Stat. 112, 119, limiting prosecutions upon penal statutes to a period of two years, extended as well to penalties created after as before that Act, and also to actions of debt as well as to informations and indictments. The Chief Justice said (2 Cranch at page 342, 2 L.Ed. 297): *"In expounding this law, it deserves some consideration, that if it does not limit actions of debt for penalties, those actions might, in many cases, be brought at any distance of time. This would be utterly repugnant to the genius of our laws. In a country where not even treason can be prosecuted after a lapse of three years, it could scarcely be supposed that an individual would remain forever liable to a pecuniary forfeiture."* (Italics inserted.)

In 1878, in United States v. Irvine, 98 U.S. 450, 25 L.Ed. 193, an indictment, brought in 1875, charged the wrongfully withholding in 1870 of a pension and its continuous withholding until the time of the indictment. The Supreme Court decided, however, that such indictment was barred by the two year limitation in Section 1044 of the Revised Statutes, 18 U.S. C.A. § 582, and said (98 U.S. at page 451, 453, 25 L.Ed. 193):

"The defendant pleaded the Statute of Limitations of two years as a bar to the indictment, and the court, having refused him the benefit of the bar on trial, now certify other questions on that subject, namely: 2. Is the crime a continuous one down to the time of finding the indictment? 3. Does the Statute of Limitations constitute a bar to this prosecution, the indictment having been found Sept. 15, 1875?

\* \* \* \* \*

"There is in this but one offense. When it is committed, the party is guilty and is subject to criminal prosecution, and from that time, also, the Statute of Limitations applicable to the offense begins to run.

*"It is unreasonable to hold that twenty years after this he can be indicted for wrongfully withholding the money, and be put to prove his innocence after his receipt is lost, and when perhaps the pensioner is dead; but the fact of his receipt of the money is matter of record in the pension office.*

"He pleads the statute of two years, a statute which was made for such a case as this; but the reply is, You received the money. You have continued to withhold it these twenty years; every year, every month, every day, was a withholding, within the meaning of the statute.

"We do not so construe the act. Whenever the act or series of acts necessary to constitute a criminal withholding of the money have transpired, the crime is complete, and from that day the Statute of Limitations begins to run against the prosecution.

"In the case before us, the judges certify that it appeared on the trial that the pensioner demanded her money of defendant on the 24th of December, 1870, and he refused to pay her, and had never paid her up to the finding of the indictment, Sept. 15, 1875; that he requested the judge to instruct the jury to acquit him, because the offence was barred by the Statute of Limitations, which the court refused to do.

"We think the statute (Rev.Stat. sect. 1044) was a bar; and we say in answer to the second question, that the crime, as shown in this case, was not a continuous one to the time of the indictment; and to the third, that the Statute of Limitations constitutes a bar to this prosecution." (Italics inserted.)

Again, in 1913, in Gompers v. United States, 233 U.S. 604, 34 S.Ct. 693, 58 L.Ed. 1115, it was held that the provision in Rev. Stat. Sec. 1044 that no person shall be prosecuted for an offense not capital unless the indictment is found or information instituted within three years after the commission of the offense, applies to acts of contempt not committed in the presence of the court. The following, contained in the court's opinion in that case, is very pertinent to the case before us (233 U.S. at pages 612, 613, 34 S.Ct. at page 696, 58 L.Ed. 1115): *"Even if the statute does not cover the case by its express words, as we think it does, still, in dealing with the punishment of crime a rule should be laid down, if not by Congress, by this court. The power to punish for contempt must have some limit in time, and in defining that limit we should have regard to what has been the policy of the law from the foundation of the government. By analogy, if not by enactment, the limit is three years. The case cannot be concluded otherwise so*

well as in the language of Chief Justice Marshall in a case where the statute was held applicable to an action of debt for a penalty. Adams v. Woods, 2 Cranch, 336 340, 341, 342, 2 L.Ed. 297–299: 'It is contended that the prosecutions limited by this law are those only which are carried on in the form of an indictment or information, and not those where the penalty is demanded by an action of debt. But if the words of the act be examined they will be found to apply not to any particular mode of proceeding, but generally to any prosecution, trial, or punishment for the offense. It is not declared that no indictment shall be found. * * * But it is declared that "No person shall be prosecuted, tried or punished." * * * In expounding this law, it deserves some consideration, that if it does not limit actions of debt for penalties, those actions might, in many cases, be brought at any distance of time. This would be utterly repugnant to the genius of our laws. In a country where not even treason can be prosecuted after a lapse of three years, it could scarcely be supposed that an individual would remain forever liable to a pecuniary forfeiture.' " (Italics inserted.)

Finally, as late as 1942, in Pendergast v. United States, 317 U.S. 412, 63 S.Ct. 268, 87 L.Ed. 368, Section 1044 of the Revised Statutes was again before the Court in a prosecution for criminal contempt, and the following passages in the Court's opinion are significant in relation to the present case (317 U.S. at page 418, 63 S. Ct. at page 270, 87 L.Ed. 368): "Adams v. Woods, 2 Cranch 336, 2 L.Ed. 297, held that this statute of limitations was applicable to an action of debt for a penalty. *Chief Justice Marshall stated that it would be 'utterly repugnant to the genius of our laws' to allow such an action to lie 'at any distance of time.' Id. 2 Cranch at page 342, [2 L.Ed. 297]. That observation is equally apt here. Proceedings like the rate litigation out of which this prosecution arose might well continue for years on end awaiting final disposition of all the funds.* If there is a contempt, it takes place when the 'misbehavior' occurs in the 'presence' of the court. Statutes of limitations normally begin to run when the crime is complete. See United States v. Irvine, 98 U.S. 450, 25 L.Ed. 193. *Every statute of limitations, of course, may permit a rogue to escape. Yet, as Chief Justice Marshall observed in Adams v. Woods, supra, 2 Cranch at page 342, 2* L.Ed. 297, *'not even treason can be prosecuted after a lapse of three years.' That was still true at the time of this offense.* See R.S. § 1043, 18 U.S.C. § 581, 18 U.S. C.A. § 581. *There is no reason why this lesser crime, punishable without some of the protective features of criminal trials, should receive favored treatment."* (Italics inserted.)

The Government contends that the language in these various cases which we have quoted as bearing upon the question here at issue is obiter dicta,—not necessary to the decision in any of the cases, since in each case the Supreme Court was concerned with the application to the facts before it of an existing statute of limitations which was fairly susceptible of a construction embracing the particular action, and that none of the cases involved a situation where, as here, Congress has specifically provided that limitations shall not begin to run until the occurrence of a particular event, distinct from the offense.

The Government further contends that the decision in Falter v. United States, supra, is controlling, on principle, of the situation before us. That case involved a proviso which had been added to Section 1044 of the Revised Statutes in November, 1921, 18 U.S.C.A. § 582, by which the three year limitation period was extended to six years as respects offenses involving defrauding or attempting to defraud the United States. That proviso reads as follows: "Provided, however, That in offenses involving the defrauding or attempts to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner, and now indictable under any existing statutes, the period of limitations shall be six years This section shall apply to acts, offenses, or transactions where the existing statute of limitations had not yet fully run on November 17, 1921; but the proviso shall not apply to acts, offenses or transactions which on that date were already barred by the provisions of existing laws."

In the Falter case, the crime was committed in 1919 and 1920, that is, at a time when the period of the statute of limitations was three years. After holding that the application of the proviso to the case was clear because of the last sentence of the proviso, the Court went on to hold that the amendment was not ex post facto legislation, saying (23 F.2d at pages 425, 426):

"But the period had not run, and the argument is, and must be, that any change after the commission of the crime, and while the time is running, is within the constitutional prohibition. It is a little curious that the only case we can discover is Com. v. Duffy, 96 Pa. 506, 42 Am.Rep. 554, though there are dicta in accord in People v. Buckner, 281 Ill. 340, 117 N.E. 1023, 3 A.L.R. 1323; and in Moore v. State, supra.

"In Mallett v. [State of] North Carolina, 181 U.S. 589, 21 S.Ct. 730, 45 L.Ed. 1015, it was held that the allowance of an appeal to the prosecution was constitutional, and Beazell v. [State of] Ohio, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216, laid it down generally that the question was one of degree and depended upon whether the result was 'harsh and oppressive.' Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurances, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the state forgives it."

Relating the facts in the present case to those in the Falter case, the Government points out that since the petition in bankruptcy was filed on June 28, 1938; since receivers were appointed at that time and a trustee shortly thereafter; and since the Chandler Act amendment to the Bankruptcy Act, including the proviso of Section 29, sub. d, became effective September 22, 1938, less than three months after the receivers and trustee had been appointed, assuming that the concealment of assets took place on the day that the petition was filed and that therefore the period of limitations in effect before the amendment, namely, three years, was applicable, limitations would run until June 28, 1941, and therefore, under the doctrine of the Falter case, even if the Chandler Act amendment to Section 29, sub. d, had not become effective until just prior to the latter date, it would still have become applicable to the present case because the prosecution was not yet "dead" when the amendment would have become effective. However, in the Falter case, the extension of the period of limitations was for a fixed, definite period, whereas in the present case there is nothing in the Chandler Act amendment which prevents the time within which prosecution may be had from being completely indefinite. Nevertheless, the Government argues that even if the three year limitation in the proviso of Section 29, sub. d, because of the impossibility of ever being applicable to a case such as the present one, where the bankrupt has not received and will never receive his discharge, be assumed to be tantamount to repealing *all* limitation upon this prosecution, such repeal was well within the power of Congress.

The difficulty with this latter argument is that it ignores what we feel was the intent of Congress in enacting the proviso in Section 29, sub. d, namely, to place *all* persons who may have concealed bankruptcy assets in the same class as respects limitations, and not to differentiate between those cases in which the bankrupt might have been discharged and those in which he might not. Indeed, any other conclusion seems very illogical since, in another part of the same Chandler amendment, Congress re-enacted that part of Section 14 of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, which prohibits the discharge of a bankrupt if he has "* * * (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors; * * *."

The Chandler Act made several radical changes in discharge procedure. It discarded the old requirement of a formal application, by individual bankrupts, to be discharged, and made their adjudication operate automatically as a discharge application, with further provision for a prompt hearing of any objections to the discharge and determination of the matter. But the old provision was retained permitting applications by parties in interest, within one year after a discharge, for revocation of the discharge, based upon fraud of the bankrupt not known at the time the discharge was granted. Bankruptcy Act, § 15, 11 U.S.C.A. § 33. Thus, while under the law as it now stands, some bankrupts may at a time when, upon different proof, a discharge

would have been denied, obtain a discharge which becomes irrevocable, but may nevertheless thereafter be subjected to criminal prosecution for concealment of assets, it is scarcely to be assumed that Congress intended to put such cases in one class, in view of the fact that, as we have just seen, the Act expressly prohibits a discharge being granted to any one proven to have concealed his assets, as set forth in the Act; and to make another class of those bankrupts who have never, and can never obtain a discharge, penalizing these latter by having the possibility of a prosecution for concealment of assets forever hanging over them, but affording immunity from such prosecution to the first class of bankrupts, after three years from their discharge. We may assume Congress might have made such a distinction, but we do not believe that this is what Congress really intended to do by the language employed.

In reaching this conclusion we have not overlooked the fact that it is concealment of assets *of* a bankrupt by *any* person, not merely *by* a · bankrupt, that the proviso in Section 29, sub. d, covers. In other words, prosecution for concealment of a bankrupt's assets is not restricted to the bankrupt himself. If it were, the two defendants whose pleas are now being considered would not have been properly joined in the present indictment with the bankrupt. They have been joined on the ground that their status was that of undisclosed owners of or that they had some interest in the bankrupt's business; or that they were acting as his agent in the alleged concealment of his assets,—situations which are expressly covered by Section 29, sub. b (1) and 29, sub. b (6), 11 U.S.C.A. § 52, sub. b (1), and 52, sub. b (6). Also, we have not overlooked the fact that proceedings in a bankruptcy court are not res adjudicata in criminal proceedings. The parties are not the same. A discharge operates against a bankrupt's creditors as to his dischargeable debts but is not binding upon the United States. Douchan v. United States, 6 Cir., 136 F.2d 144, certiorari denied 319 U.S. 773, 63 S.Ct. 1439, 87 L.Ed. 1721.

Thus, a bankrupt as well as other parties may be prosecuted for concealment of his assets regardless of whether he has or has not been discharged. Nevertheless, as respects limitations, which is the sole

question with which we are here concerned, the bankrupt's discharge is, if we follow literally the language employed in Section 29, sub. d, made the test and the sole test of whether limitations shall *ever* run. We have pointed out the very obvious inconsistency with other provisions of the Bankruptcy Act that will result if such literal interpretation is adopted.

The general purpose of a proviso in a statute is to except something from the operating effect, or ˙to qualify or restrain the generality, of the substantive enactment to which it is attached. Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332. The meaning of every law, including such provisos as it may contain, must first be sought in the language employed, and if such language is plain, courts must enforce the law as written, if it is within the constitutional authority of the legislative body that passed it. United States v. Standard Brewery, 251 U.S. 210, 40 S.Ct. 139, 64 L.Ed. 229; United States v. Missouri P. R. Co., 278 U.S. 269, 49 S.Ct. 133, 73 L.Ed. 322. But, "a thing may be within the letter of a statute and not within its meaning, and within its meaning, though not within its letter." Smythe v. Fiske, 23 Wall. 374, 380, 23 L.Ed. 47. That is to say, "Courts in the interpretation of a statute have some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results, United States v. Katz, 271 U.S. 354, 362, 46 S.Ct. 513, 516, 70 L.Ed. 986, or would thwart the obvious purpose of the statute, Haggar Co. v. Helvering, 308 U.S. 389," 60 S.Ct. 337, 84 L.Ed. 340. Helvering v. Hammel, 311 U.S. 504, at 510, 511, 61 S.Ct. 368, 371, 85 L.Ed. 303, 131 A.L.R. 1481. See also Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, 332, 333, 59 S.Ct. 191, 83 L.Ed. 195, and Gruver v. Commissioner of Internal Revenue, 4 Cir., 142 F.2d 363, 366.

The final question then becomes: What construction shall be placed upon the proviso in Section 29, sub. d? There are two possible alternatives, apart from construing the proviso literally which, for the reasons just stated, produces a result we believe was never intended: (1) Strike the proviso down as void for uncertainty and treat it as severable from the general, three year limitations provision in Section 29, sub. d, which, by it-

self, is devoid of any question of validity, thus giving effect to that general provision as though the proviso had never been enacted; or (2) interpret the proviso as though the phrase, "or until denial thereof", had been added at the very end of the proviso.

We believe that adoption of the first alternative is not justified because this would give no effect whatsoever to an intention on the part of Congress which *is* clear, namely, that for the offense of concealment of bankruptcy assets, *all* persons shall be given less consideration as respects the time within which they may be prosecuted for that offense, than as respects the other offenses made punishable by the Bankruptcy Act. As we have previously pointed out, the underlying purpose of the proviso, so far as can be ascertained, was to resolve conflicts in court decisions interpreting the meaning of "concealment" under the Bankruptcy Act as it had previously stood, that is to say, confusion as to just when the statute did begin to run in the case of "concealment". So, we are not disposed to say that the right exists, by judicial interpretation, to refuse to give any effect whatsoever to this basic intent on the part of Congress. Entertaining, as we do, this view, we are not, and should not be influenced by the fact that adoption of this first alternative construction would result in prosecution in the present case being barred by limitations, since the alleged concealment of assets which is the basis of the present indictment did not, by the wording of the indictment itself and by the Government's answer to the defendants' petition for particulars of the indictment, occur within three years of the bringing of the indictment on February 27, 1945. A sensible application of the established rules of statutory construction alone must control us.

Coming, then, to the second alternative, are we justified, without doing violence to any of these rules, to adopt it as a "cure" for the illogical, paradoxical result which would flow from a strictly literal interpretation of the proviso? We believe that we are. Such is a very logical interpretation, and one which will produce the same result as respects these present defendants as would the adoption of the first alternative,—that is to say, their prosecution would be barred, since by operation of law the bankrupt's discharge became forever barred on December 28, 1939, that is, more than five years before the present indictments. We are largely impelled to this conclusion because of the language of the Supreme Court in the series of cases which we have analyzed commencing with Adams v. Woods, supra, and ending with Pendergast v. United States, supra, decided only three years ago. We do not believe a District Court is at liberty to cast aside such language as mere dicta, as the Government would have us do, because it was clearly made a part of the ratio decidendi of these cases and, therefore, it is not sufficient to say that such language need not have been so employed.

There remains merely to consider the case of United States v. Newman, herein previously referred to as being the only known decision involving an interpretation of the proviso of Section 29, sub. d.

In that case, just as here, the bankrupt sought dismissal of an indictment for concealment of assets on the ground that the indictment was barred by the general three year statute of limitations contained in Section 29, sub. d, and that the proviso in that section was not applicable because invalid for reasons presumably similar to those advanced by the present defendants, although it is not entirely clear from the Court's opinion in the New York case precisely what the defendant's contentions were. The Court denied the motion to dismiss the indictment. We quote the following pertinent parts from Judge Caffey's opinion (63 F.Supp. 269):

"Employing September 14, 1937, as the beginning date upon which the indictment charges that concealment commenced, when the 1938 Act went into effect on September 22, 1938, the three years statute of limitations had then been running only one year and eight days. Otherwise put, if the 1938 proviso be taken as amending subdivision (d) with respect to limitations, it follows that the one year and eight days already run was wiped out. It follows also that, the offense having been made continuing, the new statute of limitations did not begin to run until the final discharge of the bankrupt.

"As I understand them, there is no dispute between counsel as to the proviso clause having the meaning I have attributed to it. Really the exclusive controversy between them is whether, if the clause be so interpreted, it is valid.

"Obviously if the former statute of limitations had been completely repealed and no substitute had been supplied, the action of Congress would have been well within its powers. If this be true, equally, as it seems to me, it must result that the substitute is valid. No Federal decision so holding has been drawn to my attention. Nevertheless, I am convinced that two State cases which have been cited and which I have examined sustain the proposition. These are Commonwealth v. Duffy, 96 Pa. 506, 507, 514, 515, 42 Am.Rep. 554; and Moore v. State, 43 N.J.L. 203, 213, 228, 229, 39 Am.Rep. 558.

"*If the defendant has been finally discharged, that has not been shown either in the indictment or otherwise. This remains to be brought out at the trial. The indictment was filed February 8, 1945. But whether there was a discharge more than three years earlier is an issue which, in the existing condition of the record, does not affect disposition of the present motion.* (Italics inserted.)

"The defendant argues that if Section 29 of the Act be construed in the way my holding approves, bankrupts will or may suffer injustice and sound public policy be violated under Section 32, 11 U.S.C.A. It is said this is true because of some conflict between or confession in the sections. I feel that there are several answers. These are that (1) I doubt whether such results would ensue. (2) If so, the remedy is to seek amendment of one or both of the sections. (3) Difficulties such as are anticipated are an insufficient justification for refusing to adopt an interpretation of Section 29 which its language plainly demands. (4) Unwise public policy is not the equivalent of lack of power or if (as here) Congress possess the authority to legislate as it has done in the two sections named, that is not the business of this court."

It is to be noted that in the Newman case, the Court treated the factual situation as it appeared from the pleadings without regard to whether there had been a discharge of the bankrupt,—the exact fact as to which was not disclosed to the Court. Note the Court's statement: "But whether there was a discharge more than three years earlier is an issue which, in the existing condition of the record, does not affect disposition of the present motion." It will thus be seen that the Court in the New York case did not have presented to it, as we have here, a factual situation involving a clear inconsistency between a case where there has actually been a discharge and one where none has been or can be granted. In short, whatever the precise factual situation as respects the bankrupt's discharge may have been in the Newman case, it apparently was not fully presented to the Court as have been the facts in the present case. Furthermore, it is to be noted that no mention is made by Judge Caffey, in his decision, of the series of Supreme Court decisions which we feel cannot be ignored if a completely comprehensive consideration is to be given to the question before us.

Accordingly, and without quoting again the reasons given by Judge Caffey at the close of his opinion for believing that the proviso of Section 29, sub. d, is valid, and that the only remedy for alleged injustice that may flow from giving effect to it is by Congressional amendment, we find ourselves unable to agree with his conclusion. We are advised by Government counsel in the case before us that an appeal is pending from the action of the District Court in the Newman case.

■ To summarize our conclusions: We reach the same result as that reached following the first hearing in this case and find, for the reasons herein given, (1) that the provisions of Section 29, sub. d, of the Bankruptcy Act as amended, effective September 22, 1938, apply to the present case; (2) that the proviso in this section as amended should be construed as though the words "or until denial thereof" appeared at the very end of the proviso; (3) that so construed, this proviso is valid; and (4) that since by operation of law the right to a discharge became forever foreclosed to the bankrupt on December 28, 1939, and, therefore, is to be treated as having been on that date finally denied him; and since the present indictment was not brought until February 27, 1945, that is, more than three years after December 28, 1939, prosecution of these defendants under the present indictment is barred by limitations and, therefore, the defendants' pleas of limitations must be sustained.

An order will be signed in accordance with this opinion.