

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1402-09

**WILLIAM RAY PHILLIPS, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE TENTH COURT OF APPEALS
## McLENNAN COUNTY

KELLER, P.J., filed a dissenting opinion in which KEASLER, and HERVEY, JJ., joined.

The Court appears to misunderstand the nature of the *ex post facto* prohibition. Because the legislature has not passed an *ex post facto* law, there has been no *ex post facto* violation in this case. And because appellant failed to raise his statute-of-limitations defense at trial, he has forfeited his complaint.

### A. Only the Legislature Can Commit an *Ex Post Facto* Violation

The United States Constitution provides: "No state shall . . . pass any . . . ex post facto Law."[1]

---

[1] U.S. CONST. art. I, § 10, cl. 1.

The Texas Constitution provides: "No . . . ex post facto law . . . shall be made."[2] Thus, something can be "ex post facto" only if it is a "law," and the language in the United States Constitution specifies that a "law" for these purposes is something that is "passed."

In *Ortiz v. State*, we explained: "In both provisions, the language is directed at the legislature, not the courts."[3] And though the Court now relies upon *Ieppert v. State*,[4] we explained in *Ortiz* that "[i]n *Ieppert v. State*, we did not appear to appreciate the distinction."[5] Under Supreme Court precedent, we explained, "the *ex post facto* clause does not apply to the judiciary."[6] Specifically, "an *ex post facto* problem does not arise from a trial court's erroneous retroactive application of a statute, but only if the statute itself has retroactive effect."[7] Although the retroactive application of a statute by the judiciary may implicate due process, "due process does not incorporate all of the *ex post facto* clause's strictures."[8] In finding that "the protections are not coextensive," the Supreme Court has

---

[2] Tex. Const. art. I, § 16.

[3] 93 S.W.3d 79, 91 (Tex. Crim. App. 2002).

[4] 908 S.W.2d 217 (Tex. Crim. App. 1995).

[5] *Ortiz*, 93 S.W.3d at 91. In any event, *Ieppert* addressed only whether *ex post facto* claims were forfeitable; it did not address whether the defendant's statute-of-limitations claim, if true, would establish an *ex post facto* violation. *See Ieppert*, 908 S.W.2d at 218 ("The Court of Appeals did not reach the merits of" the *ex post facto* claim, "holding instead that appellant forfeited the right to complain of it on appeal because he did not first raise it in the trial court."), 220 (holding that "ex post facto prohibitions do not merely confer upon the people a waivable or forfeitable right not to have their conduct penalized retroactively" and remanding for proceedings consistent with the opinion).

[6] *Ortiz*, 93 S.W.3d at 91 (citing *Rogers v. Tennessee*, 532 U.S. 451 (2001)).

[7] *Id.* (citing *Johnson v. United States*, 529 U.S. 694 (2000) and summarizing its holding in a following parenthetical as: "because new statute did not apply retroactively, no *ex post facto* question arises; only question is whether the old statute authorized the trial court's action").

[8] *Id.* (citing *Rogers*, 532 U.S. at 457-62).

"pointed to 'important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.'"[9] And in a statute-of-limitations context, we have specifically recognized that the *Ex Post Facto* Clause "is a limitation upon the powers of state legislatures and not state courts."[10] Contrary to the Court's contention that this is a "subtle" argument,[11] the distinction between legislative action and judicial decision-making is crucial.

The Court's attempt to distinguish *Ortiz* is internally inconsistent. The Court first acknowledges that the insertion of the words "or status" in the jury charge was mere jury charge error, even though the words "or status" were in a later version of the statute but not in the version of the statute in effect at the time the offense was committed.[12] But the Court says that it would be an *ex post facto* violation if instead of "or status," the extraneous words were "a public servant." The Court's interpretation *Ortiz* is simply at odds with the express language and holding in that case.

The Court claims that a jury charge erroneously containing the words "a public servant" would be "an *ex post facto* violation under *Johnson*."[13] But the Court's own parenthetical quote from *Johnson* effectively refutes the Court's contention: "To prevail on this sort of *ex post facto* claim, Johnson must show . . . that the *law* he challenges *operates* retroactively (that *it* applies to conduct completed before its enactment).[14]

---

9  *Id.* (quoting *Rogers*, 532 U.S. at 460).

10  *Proctor v. State*, 967 S.W.2d 840, 845 (Tex. Crim. App. 1998).

11  *See* Court's op. at 18.

12  Court's op. at 12 n.32.

13  Id.

14  *See id.* (quoting *Johnson*, 529 U.S. at 699) (emphasis added).

The Court contends that *Carmell v. Texas*[15] found the "application" of a new law to run afoul of the *ex post facto* prohibition "even though the law itself was not facially retroactive."[16] The Court cites to pages 530-31 in *Carmell* as support, but I do not see anything in those pages that stands for the proposition attributed by the Court.[17] And I am unable to find any passage in *Carmell* that says this.[18]

The law at issue in *Carmell* changed the quantum of evidence necessary to support a conviction for certain sexual offenses—permitting conviction on uncorroborated testimony in some situations in which corroboration had previously been required.[19] The statute contained no savings provision,[20] so it was applicable to any case that met its terms, which included subsequent trials regardless of whether the offenses were committed before or after the statutory change.[21]

The Court also contends that *Scott v. State*[22] involved a holding that an *ex post facto* violation

---

[15]  529 U.S. 513 (2000).

[16]  Court's op. at 7; *see also* Court's op. at 19.

[17]  *See Carmell*, 529 U.S. at 530-31.

[18]  *See id., passim.*

[19]  *See Carmell*, 529 U.S. at 516-18 (addressing changes to TEX. CODE CRIM. PROC. art. 38.07).

[20]  *See* Acts 1993, 73rd Leg., ch. 200, § 1 & *passim*; Acts 1993, 73rd Leg., ch. 900, § 12.01 & *passim*.

[21]  *See Carmell*, 529 U.S. at 530 ("Under the law in effect at the time the acts were committed, the prosecution's case was legally insufficient and petitioner was entitled to a judgment of acquittal, unless the State could produce both the victim's testimony and corroborative evidence. The amended law, however, changed the quantum of evidence necessary to sustain a conviction; under the new law, petitioner could be (and was) convicted on the victim's testimony alone, without any corroborating evidence.").

[22]  55 S.W.3d 593 (Tex. Crim. App. 2001).

occurs when a statute is not "facially retroactive" but is applied retroactively. The Court is mistaken. *Scott* held that the enhancement statute at issue was retroactive.[23] Although the statute contained the "standard" savings clause applicable to enhancements, the standard savings clause was not sufficient for *ex post facto* purposes because the enhancement was not a standard enhancement.[24] Ordinarily, a law creating an enhancement by prior conviction does not violate the *Ex Post Facto* Clause so long as the law was in place before the commission of the new offense for which the prior conviction is being used to enhance, even though the prior conviction may predate the enhancement provision.[25] No *ex post facto* violation occurs in that situation because the enhancement "punish[es] the new offense rather than the prior conviction."[26] But the enhancement provision at issue in *Scott* modified what was previously an explicit assurance by statute that a defendant placed on deferred adjudication would not be subject to "disqualifications or disabilities" if he successfully completed his deferred adjudication.[27] The legislature could modify that statutory assurance for people who would be placed on deferred adjudication in the future, but it could not modify that assurance for people who had been placed on deferred adjudication in the past.[28] To prevent the enhancement statute from having unconstitutionally retroactive reach, then, the legislature should have drafted a special savings clause

---

[23] *Id.* at 596-98; *specifically see id.* at 596 ("We conclude that the Legislature intended to permit the use for enhancement of deferred adjudications that were assessed before the enactment of the enhancement provision.").

[24] *Id.* at 596-98.

[25] *Id.* at 596.

[26] *Id.*

[27] *Id.* at 596-98.

[28] *See id.*

for the special situation with which it was confronted, but it did not do so.

The Court claims that the present case is analogous to *Scott*, but it is not. In *Scott*, it was the enhancement provision itself that was retroactive; the trial court made no mistake in construing the meaning of that provision. As will be discussed later, the statute at issue in the present case contained a savings provision tailored for the statute-of-limitations context that prevented the statute from having unconstitutionally retroactive reach.

The Court suggests that its holding is supported by six statute-of-limitations cases that found *ex post facto* violations.[29] First, the Court cites *Stogner v. California*[30] for the proposition that the *Ex Post Facto* Clause forbids the resurrection of a time-barred prosecution.[31] In that case, the California statute expressly authorized the resurrection of a time-barred prosecution.[32] The Supreme Court's statement that the "*Ex Post Facto* Clause forbids resurrection of a time-barred prosecution" introduced a discussion about the Reconstruction Congress's rejection of a *bill* that would have done

---

[29] The Court does not directly suggest that its holding is supported Judge Learned Hand's opinion in *Falter v. United States*, 23 F.2d 420 (2[d] Cir. 1928), but it cites *Falter* for the "rationale" for the rule that a legislature cannot retroactively extend a limitations period for an offense that is already barred by limitations. *See* Court's op. at 11 n.28. But Judge Learned hand was addressing a statutory amendment that, by its terms, had retroactive reach. *Falter*, 23 F.2d at 425 ("In November, 1921, the proviso was added by which the period was extended to six years in the case of 'offenses involving the defrauding or attempts to defraud the United States or any agency thereof, whether by conspiracy or not.' 18 USCA § 582. The application of the proviso to the case at bar *being clear from its last sentence*, the defendants argue that *the amendment* is *ex post facto legislation*. Perhaps they would be right, if the earlier statute had once run in their favor.") (emphasis added).

[30] 539 U.S. 607 (2003).

[31] Court's op. at 13-15.

[32] 539 U.S. at 609.

so.[33]   In the next paragraph, the Supreme Court referred to State Supreme Courts as holding that "*laws* reviving time-barred prosecutions are *ex post facto*."[34]   In its concluding paragraph, the Supreme Court stated: "We conclude that a law enacted after expiration of a previously applicable limitations period violates the *Ex Post Facto* Clause when it is applied to revive a previously time-barred prosecution."[35]   Though the Supreme Court used the word "applied" in this sentence, it was clearly talking about an *Ex Post Facto* violation being caused by the "law" itself, not by an (erroneous) application of the law.

The Court also relies upon *State v. Sneed*,[36] an early Supreme Court of Texas decision.[37]   The *Sneed* opinion is brief, and the Court has quoted the opinion in its entirety.  For the convenience of the reader, I set it out below:

> In this case the bar of the statute of limitations of one year was completed before the code went into operation, by which the period of limitation of prosecutions in such misdemeanors was extended to two years. The state having neglected to prosecute within the time prescribed for its own action, lost the right to prosecute the suit. To give an act of the legislature, passed after such loss, the effect of reviving the right of action in the state, would give it an operation *ex post facto*, which we cannot suppose the legislature intended.[38]

The *Sneed* court may have been suggesting that it was construing the new statute narrowly to avoid a constitutional violation, a common rule of construction grounded on the presumption that the

---

[33]  *Id.* at 616.

[34]  *Id.* at 617 (emphasis added).

[35]  *Id.* at 632-33.

[36]  25 Tex. 66 (1860).

[37]  Court's op. at 14-15.

[38]  *Sneed*, 25 Tex. at 67.

legislature intended the law to comply with the constitution.[39] But *Sneed* did not hold that an *ex post facto* violation could arise from a trial court's erroneous application of a statute. Even if it did, the *Ortiz* decision would control because *Ortiz* is far more recent, is from this Court, and contains a more extensive and specific discussion regarding the issue at hand.

Third, the Court relies upon *People v. Shedd*,[40] a Colorado Supreme Court case.[41] In that case, the defendant raised a statute-of-limitations claim at trial, and the trial court dismissed the case on that basis.[42] Affirming that decision, the Colorado Supreme Court stated: "Retroactive application of a statute of limitations to revive a previously barred prosecution violates the fundamental constitutional prohibition against *ex post facto* legislation."[43] Significantly, the court did not say that the defendant suffered an *ex post facto* violation, nor did the court even hold that the statute at issue in that case violated the *ex post facto* clause.[44] It did not have to. Because the defendant timely raised a limitations claim, it was either true that the statute did not retroactively extend limitations for a time-barred prosecution—perhaps by being narrowly construed to avoid an *ex post facto* violation—or it did operate in such a retroactive manner, with such extension being invalid under the prohibition against *ex post facto* laws. What is significant is that the Colorado

---

[39] *See Lebo v. State*, 90 S.W.3d 324, 329-30, 330 n.22 (Tex. Crim. App. 2002).

[40] 702 P.2d 267 (Colo. 1985).

[41] Court's op. at 15.

[42] *Shedd*, 702 P.2d at 268.

[43] *Id.*

[44] *See id.*

court recognized that the *ex post facto* prohibition was directed against "legislation."[45]   But even if

the Colorado decision did stand for the proposition cited for it by the Court, it preceded the United

States Supreme Court decisions in *Rogers* and *Johnson* upon which our *Ortiz* decision relied.

In a footnote, the Court cites *Commonwealth v. Rocheleau*,[46] a Massachusetts Supreme Court

decision, and *United States v. Fraidin*,[47] a federal district court opinion.[48] The *Rocheleau* decision

held that indictments were barred by limitations because limitations for a time-barred prosecution

cannot be legislatively extended.[49]   However, the words "*ex post facto*" appear nowhere in the

Massachusetts court's opinion.[50] And the Court's own quotation from the *Fraidin* opinion is at odds

with the Court's contention: The federal district court said, "[B]ut such a *statute* cannot *operate* to

revive offenses which were barred at the time of its enactment since it *would in such case* be ex post

facto."[51] Thus, *Fraidin* recognized that it was the operation of the statute that mattered under the *ex*

---

[45] Analysis of the Colorado statute may be complicated by some unusual aspects of the case. Originally, sex offenses in Colorado had a limitations period of three years. *See People v. Holland*, 708 P.2d 119, 119 (Colo. 1985).  For sex offenses in which the victim was a child under fifteen years of age, the 1982 amendment provided: "The period of time during which a person may be prosecuted shall be extended for an additional seven years . . . ." *See id.* at 119 n.2.  No savings provision was enacted at the time the amendment was passed, but a provision purporting to express the legislature's intent was enacted in 1985. *See id.* at 120.  The intent provision was framed in such a way as to comply with the rule later expressed in *Stogner*: "The intent of the general assembly in enacting section 16-5-401(6) and (7) in 1982 was to create a ten-year statute of limitations as to offenses specified in said subsections committed on or after July 1, 1979." *See Holland*, 708 P.2d at 120.

[46] 404 Mass. 129, 533 N.E.2d 1333 (1989).

[47] 63 F. Supp. 271 (D.C. Md. 1945).

[48] Court's op. at 16 n.49.

[49] *Rocheleau*, 404 Mass. at 130-31, 533 N.E.2d at 1334.

[50] *See id., passim*.

[51] *Fraidin*, 63 F. Supp. at 276 (emphasis added).

*post facto* clause. In any event, *Rocheleau* and *Fraidin* were both decided before the United States Supreme Court decisions in *Rogers* and *Johnson* upon which our *Ortiz* decision relied.

Finally, the Court relies upon *State v. Garcia*,[52] a Kansas Supreme Court case.[53] The Court contends that the case stands for the proposition that a defendant cannot waive an *ex post facto* claim in the limitations context, but the Court overlooks the fact that the Kansas court drew a sharp distinction between a prosecution that was outside the limitations period and a case in which the period of limitations was retroactively extended by *statute*:

> The State's arguments muddy the issue. By the time the rape charge was filed against Garcia in late January 2004, the statute of limitations already had been extended by the legislature to 1 year after his August 2003 DNA testing-to August 2004. Accordingly, the proper question is not whether he was being prosecuted outside of the statute of limitations. *Under the amended statute, he clearly fell within the limitations period; therefore, the statute of limitations defense was not available to him*, and case law concerning waiver of a limitations period as an affirmative defense is inapplicable. Rather, the proper question is whether the amended statute lengthening the limitations period was applied contrary to a constitutional provision, i.e., the *Ex Post Facto* Clause, and we have held that it was.[54]

As the above passage shows, the defendant in the Kansas case had no statute of limitations defense because the new statute extended the period of limitations. The Kansas court found that very fact to be the reason the prosecution's waiver arguments were unavailing.

### B. The Legislature Did Not Commit an *Ex Post Facto* Violation

The 1997 amendments to the limitations statute contained the following savings provision that prevented the statute from operating contrary to the dictates of *Stogner*:

---

[52] 169 P.2d 1069 (Kan. 2007).

[53] Court's op. at 17.

[54] *Id.* at 1076 (emphasis added).

> The change in the law made by this Act does not apply to an offense if the prosecution of the offense became barred by limitation before the effective date of this Act. The prosecution of that offense remains barred as though this Act had not taken effect.[55]

So the savings provision prevented the 1997 amendments from applying to appellant's sex offenses that became barred in 1993. The parties and the trial court were simply mistaken in believing that the 1997 statute applied. The legislature did not pass an *ex post facto* law.

This case is no different than a case in which the statute of limitations has simply not been complied with. It is no different from a case in which the statute of limitations is five years, and has always been five years, but the charging instrument was not returned until after seven years (with no tolling circumstances present). Under the applicable statutes, appellant's case was time-barred, and all of the trial participants were simply mistaken in believing otherwise. It does not matter how the statute of limitations was later amended, if those later amendments do not apply to appellant. Those inapplicable amendments cannot magically convert a plain vanilla statute-of-limitations claim into an *ex post facto* violation.

## C. Limitations Defense Was Forfeited

The question now is whether appellant can raise his plain-vanilla limitations claim for the first time on appeal. In *Proctor v. State*, we held that statute of limitations was a defense that a defendant forfeited if he failed to raise it before or at trial.[56] The Court contends that *Proctor* is distinguishable and governs a statute-of-limitations defense only if it involves facts rather than "pure

---

[55] Acts 1997, 75th Leg., Ch. 740, § 3. The 2007 amendments that again changed the period of limitations for sex offenses contained an almost identically worded savings provision. *See* Acts 2007, 80th Leg., ch. 593, § 4.01(c).

[56] 967 S.W.2d at 844.

law."[57] The Court's contention is at odds with the reasons given in *Proctor* for holding the defense

to be forfeitable.  Several reasons we gave for treating a statute-of-limitations defense as forfeitable

were: (1) "limitations has little to do with the truth-finding function of the criminal justice system,"

(2) "a defendant might make a calculated decision to waive the defense when the statute is about to

run in order to gain time for plea bargaining," and (3) "a defendant might want to forego the

limitations defense in order to vindicate his good name in the face of a serious and publicly known

charge."[58]   All of these reasons apply equally to situations in which an offense is barred by

limitations as a matter of law.

Relying upon cases that say a (non-reparable) limitations bar may be raised in pretrial habeas

proceedings,[59] the Court claims that this somehow means that a (non-reparable) limitations bar may

be raised for the first time on appeal.  But there is no necessary connection between the two

concepts.  Indeed, the facial constitutionality of a statute that defines the offense may be challenged

in a pretrial habeas proceeding,[60] but such a claim cannot be raised for the first time on appeal.[61]  The

Court claims that *Tita v. State* distinguished between factual proof under *Proctor* and an irreparable

---

[57]  Court's op. at 16.

[58]  *Id.*  I add to this list the possibility that foregoing a limitations defense could be part of a plea agreement involving multiple charges.  For example, a defendant accused of capital murder might forego limitations defenses for lesser offenses in exchange for the State's waiver of the death penalty.

[59]  *Ex parte Smith*, 178 S.W.3d 797, 801-02 (Tex. Crim. App. 2005); *Ex parte Tamez*, 38 S.W.3d 159, 160 (Tex. Crim. App. 2001).

[60]  *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) ("Pretrial habeas can be used to bring a facial challenge to the constitutionality of the statute that defines the offense.").

[61]  *Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009).

bar, but *Proctor* was distinguished on the basis that the Code of Criminal Procedure contains a requirement that an indictment reflect on its face that the prosecution is not barred by limitations.[62] Unfortunately for appellant, the Code of Criminal Procedure also provides that a defendant forfeits error if he fails to object before trial to a defect of form or substance in the indictment.[63]

The Court cites *Ex parte Smith* for the proposition that a limitations bar may be raised "in a pretrial motion to quash or dismiss, a pretrial writ, at trial, on direct appeal, or in a collateral proceeding."[64] Contrary to the Court's contention, *Smith* did not say that limitations may be raised for the first time on appeal,[65] and the "collateral proceeding" to which *Smith* apparently referred was a pretrial habeas request for bail.[66] And *Smith* did not necessarily approve the holding in the bail case. The Court simply stated that this past decision found the pleading to be "so fundamentally defective that the trial court does not have jurisdiction and habeas relief should be granted," but the Court then supplied, in a footnote, a "but see" cite to *Proctor*.[67] Moreover, the bail case, *Ex parte Dickerson,* was a 1977 decision that predated both *Proctor* and the legislative amendments that imposed the pretrial objection requirement for challenging a defect in the indictment.

---

[62] *Tita v. State*, 267 S.W.3d 33, 38 (Tex. Crim. App. 2008) (citing TEX. CODE CRIM. PROC. art. 21.02(6) ("The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation.")).

[63] TEX. CODE CRIM. PROC. art. 1.14(b); *Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990).

[64] Court's op. at 16-17 (citing *Smith*, 178 S.W.3d at 801-02).

[65] *Smith*, 178 S.W.3d at *passim*.

[66] *See id.* at 802 (citing *Ex parte Dickerson*, 549 S.W.2d 202 (Tex. Crim. App. 1977)); *See Dickerson*, *supra*.

[67] *Smith*, 178 S.W.3d at 802 & n.19.

Further, in *Posey v. State*, we held that the failure to request a defense means that the defense is not "law applicable to the case" and thus cannot be a basis for a jury-charge complaint.[68] I believe a substantive defense could be raised as a sufficiency-of-the evidence point without a prior objection if the evidence proves the defense as a matter of law.[69] But statute of limitations is not a substantive defense. It is contained in the Code of Criminal Procedure, not the Penal Code, and it does not negate criminal liability at the time the conduct was committed. Instead, statute of limitations is a procedural defense, an "act of grace" by the legislature.[70] Thus, it can be forfeited in its entirety, and it was forfeited in this case.[71]

I respectfully dissent.

Filed: June 15, 2011
Publish

---

[68] 966 S.W.2d 57 (Tex. Crim. App. 1998).

[69] *See Wright v. State*, 981 S.W.2d 197, 203-04 (Tex. Crim. App. 1998) (Keller, J., dissenting).

[70] *Proctor*, 967 S.W.2d at 843.

[71] That does not mean, however, that appellant is without any possible remedy. If appellant did not knowingly forgo the defense and his attorney had no valid strategy for failing to raise it, then appellant may well have a valid claim of ineffective assistance of counsel.